IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN K. THOMSON, )
)
      Plaintiff, )
)
V. ) Civil No. **01-526-CJP**[1]
)
**ODIE WASHINGTON, et al.,** )
)
      Defendants. )

## ORDER

**PROUD, Magistrate Judge:**

Plaintiff Brian K. Thomson, an inmate in the custody of the Illinois Department of Corrections, housed at all relevant times at Menard Correctional Center, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. **(Doc. 1).** Plaintiff names Odie Washington and Donald Snyder, both former directors of the Illinois Department of Corrections, Lt. Oakley[2] and other unidentified "John Doe" correctional officers at Menard Correctional Center as defendants. As previously summarized by the Court of Appeals for the Seventh Circuit:

> The complaint . . . charges prison officials with having confiscated the plaintiff's legal papers (including a brief in the Supreme Court of Illinois) thereby causing him to lose a number of lawsuits, denied him daily physical exercise and a prescribed diet (and incidentally caused him to lose 30 pounds in two months), subjected him to ambient cigarette smoke even though he is allergic to cigarette smoke, and retaliated against him for complaining about these and other conditions of his confinement by first placing him in solitary confinement and then a higher-security prison, all in

---

[1] In accordance with 28 U.S.C. § 636(c)(1), upon the consent of the parties, Chief Judge David R. Herndon referred this action to the undersigned magistrate judge for all further proceedings, through and including entry of final judgment. **(Docs. 17, 78 and 81).**

[2] The complaint refers to defendant "Lt. Oakly." Richard Oakley has entered his appearance in this case. The variance in spelling in this order mirrors the variances in the evidence before the Court, and its significance is discussed at length.

1

violation of the federal constitutional rights of prisoners. *Thomson v. Washington*, 362 F.3d 969, 969 -970 (7th Cir. 2004). More specifically, the complaint has been characterized as encompassing: (1) a claim of denial of access to the courts in violation of the First Amendment and due process clause of the Fourteenth Amendment; (2) a claim of infliction of cruel and unusual punishment by denying essential medical treatment in violation of the Eighth Amendment; and (3) a claim of retaliation for seeking redress of grievances in violation of the First Amendment. **(Doc. 14, p. 1).**

Before the Court is defendants Odie Washington, Lt. Oakly and Donald Snyder's motion for summary judgment. **(Doc. 85).** In essence, defendants Washington and Snyder assert that they lacked personal involvement and cannot be held liable under the respondeat superior doctrine. Defendant Oakly contends that he never worked at Menard Correctional Center, where the alleged wrongdoing is said to have occurred. Plaintiff has not filed a response, despite having been mailed notice of the possible consequences of failing to respond. **(Doc. 86).**

## The Legal Standard for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986);** *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir.2000).** The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Spath,* **211 F.3d at 396.**

The moving party has the burden of establishing that there is no genuine issue of material

fact. *Celotex Corp.,* **477 U.S. at 323.** If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. **Fed.R.Civ.P. 56(e);** *Celotex,* **477 U.S. at 322-26;** *Johnson v. City of Fort Wayne,* **91 F.3d 922, 931 (7th Cir.1996).** The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 586 (1986);** *Michas v. Health Cost Controls of Ill., Inc.,* **209 F.3d 687, 692 (7th Cir.2000).** Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* **477 U.S. at 248;** *Insolia v. Phillip Morris, Inc.,* **216 F.3d 596 (7th Cir.2000).** Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* **477 U.S. at 248-250.**

### Legal Standards for Personal Involvement and Responsibility

In a civil rights suit such as this, 42 U.S.C. §1983 requires a plaintiff to show "(1) an action taken under color of law (2) which violates his federal constitutional rights." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, **924 F.2d 106, 107 (7th Cir. 1991).** *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), stresses that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." *See also McBride v. Soos*, **679 F.2d 1223, 1227 (7th Cir.1982).**

"The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' " *Sanville v. McCaughtry,* **266 F.3d 724, 740 (7th Cir. 2001),** *quoting Chavez v. Ill. State Police,* **251 F.3d 612, 651 (7th Cir. 2001).** *; see also Monell v. Department of Social*

3

*Services,* 436 U.S. 658 (1978); *Eades v. Thompson,* 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth,* 644 F.2d 653, 655-56 (7th Cir. 1981). A director of a state correctional agency is not personally responsible for constitutional violations within prison system *solely* because grievance procedure made him aware of it and he failed to intervene. *Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir.1982). However, supervisory officials may be liable for the constitutional torts of their subordinates *if* the supervisor knows of and facilitates, approves, condones, or turns a blind eye to the conduct. *Chavez v. Cady,* 207 F.3d 901, 906 (7th Cir. 2000); *Jones v. City of Chicago,* 856 F.2d 985, 992-93 (7th Cir. 1988).

### The Evidence Before the Court

The complaint alleges that, following plaintiff's announcement that he intended to file a grievance about the confiscation of his personal property, Lt. Oakly momentarily left the area and then returned, stating that Unit Supervisor Larry Hopkins had said that no grievance was going to be filed and that plaintiff was "rolled," meaning plaintiff was transferred from the minimum security unit to a maximum security unit. According to plaintiff, his property was improperly confiscated and he was written a baseless disciplinary ticket, which was later dismissed. Plaintiff further contends that his property, including needed legal materials, were returned in part, lost and/or destroyed. Plaintiff asserts that the confiscation was at the order of Director Snyder and based on Snyder's policies, and Snyder later affirmed the denial of a related grievance. The complaint also alleges that the legal materials that were never returned adversely impacted several legal actions plaintiff was litigating. Although Director Washington is not mentioned outside of the caption of the complaint, plaintiff does refer to "the defendants" losing or destroying his property, and "the

4

defendants" forcing inmates to make choices about which legal cases they can work on based on what items of property they can access. Lastly, plaintiff succinctly claims: "I was denied prescribed medical treatment. That I have been placed in cells that were in smoking aress" [sic].

During his deposition, plaintiff was questioned extensively about each defendant's personal involvement in the alleged constitutional wrongs. **(Docs. 85-2 and 85-3).** Plaintiff testified that Lt. Oakly's involvement was limited to his statement about what Unit Supervisor Larry Hopkins had said about plaintiff not filing a grievance, and subsequently packing plaintiff's personal property, handcuffing him and leading plaintiff away from the cell. **(Doc. 85-2, pp. 24-26 and 32; and Doc. 85-3, pp. 38, 40, 50 and 64).** Plaintiff expressly stated that he did not know if Oakly had any personal involvement in the decision to pack plaintiff's property and handcuff him, nor did he know if Oakly had any contact with plaintiff's property after it was packed. **(Doc. 85-3, pp. 41-42).** According to plaintiff, Oakly's only connection to the alleged denial of medical treatment stemmed from the fact that medication and a brace were lost from plaintiff's property box. **(Doc. 85-3, pp. 36-37).**

Plaintiff testified that the *only* connection between Directors Snyder and Washington and the alleged constitutional wrongs is that they each approved the denial of the grievances he filed stemming from the confiscation of his property. **(Doc. 85-2, pp. 28-29, 30, 32, 34; and Doc. 85-3, pp. 45, 53, 63 and 64).** From plaintiff's perspective, affirming the denial of plaintiff's grievances is tantamount to approving subordinate employees' unconstitutional conduct. **(*See* Doc. 85-2, p. 28).** According to the affidavit of Terri Anderson, Manager of the Office of Inmate Affairs, that oversees record keeping for the Administrative Review Board, neither Director Washington, nor Director Snyder personally reviewed any grievances filed by plaintiff Thomson. **(Doc. 85-4, p. 1).**

During his August 24, 2007, deposition, plaintiff was questioned about *James* Oakley, Badge No. 32, who wrote plaintiff the disciplinary ticket on the day plaintiff's property was confiscated. **(*See* Doc. 85-4, p. 4).** Plaintiff apparently did not realize that *Richard* Oakley is participating in this action as the "Lt. Oakly" listed in the complaint. **(*See* Doc. 85-3, pp. 52 and 64).** In support of the subject motion for summary judgment, the defendants have submitted the affidavit of a member of the IDOC Personnel Department stating that Richard Oakley is a former employee, who was a correctional lieutenant at Danville Correctional Center and at Concordia Court in Springfield, Illinois– who has *never* worked at Menard Correctional Center. **(Doc. 85-4, p. 2).** A careful review of the record reveals that the complaint does not contain a first name for "Lt. Oakly," and only describes him as "a Lt. at Menard msu has now been promoted to another facility with Illinois Dept. Of Corrections, 1301 Concordia Ct., Springfield, IL 62794." **(Doc. 1, p. 2).** Although the U.S. Marshal's Service was tasked with effecting service on plaintiff's behalf, they utilized the USM-285 form filled out and signed by plaintiff on June 16, 2004, which lists the defendant to be served as "Rick Oakley." **(Doc. 29).** In accordance with plaintiff's specific designation, "Rick Oakley" was served, even if plaintiff may have meant to serve James Oakley, who issued plaintiff a disciplinary ticket and was involved in the alleged confiscation of plaintiff's property.

Further review of the record reveals that in August 2005, when service was effected, Kellie L. Petersen, a litigation coordinator at Danville Correctional Center, wrote to the U.S. Marshal suggesting that the Richard Oakley at Danville Correctional Center is not the Lt. Oakly mentioned in the complaint, who was described as having worked at Menard Correctional Center. **(Doc. 30).** The CM-ECF docketing receipt indicates that when that letter was made a part of the record in this case, a copy was mailed to plaintiff. On plaintiff's motion, "Lt. Oakly" was subsequently

6

voluntarily dismissed. **(Docs. 37 and 42).** However, plaintiff later successfully moved to have "Lt. Oakley" reinstated as a defendant. **(Docs. 51 and 63).**

### Defendants Snyder and Washington

Clearly, in accordance with the aforementioned legal standards, defendants Snyder and Washington lack sufficient personal involvement to be held liable under Section 1983. By plaintiff's own admission, the sole basis for liability is Snyder and Washington's apparent affirmation of the denial of grievances plaintiff filed after his property was confiscated. Plaintiff has not rebutted the affidavit that states that neither Snyder, nor Washington, personally reviewed any grievances filed by plaintiff, and there is nothing else in the record to even suggest that there is a question of material fact regarding Snyder and Washington's involvement. Therefore, the defendants' motion for summary judgment relative to Snyder and Washington is well taken.

### Defendant "Lt. Oakly"

Plaintiff's deposition testimony strongly suggests that he meant to pursue James Oakley in this action. Regardless, in accordance with the USM-285 service form filled out by plaintiff at the outset of this case, "Rick Oakley" was served. It is surely not the U.S. Marshal's responsibility to question the name specifically provided by plaintiff. Moreover, plaintiff did nothing when the IDOC wrote suggesting that the wrong person may have been served, or when Oakly was dismissed and reinstated, or even after the identity confusion came to the surface during plaintiff's deposition. Furthermore, plaintiff has not responded to the motion for summary judgment, so there is nothing in the record to rebut the evidence that Richard Oakley *never* worked at Menard Correctional Center, where the alleged constitutional violations occurred. Therefore, summary judgement is appropriate, as all the evidence before the Court indicates Richard "Rick" Oakley was not personally involved

7

in the alleged constitutional violations and, according to plaintiff's designation, "Rick Oakley" and "Lt. Oakly" are synonymous.

**Unidentified Defendants**

The caption of the complaint included "John Does" as defendants. The Court gave plaintiff an opportunity to identify the unidentified defendants. **(Doc. 48).** When plaintiff failed to identify the "John Doe" defendants, they were dismissed without prejudice. **(Doc. 49).** The Court later vacated that dismissal and afforded plaintiff an additional opportunity to identify the unidentified defendants. **(Doc. 70).** Plaintiff was warned that failure to identify and effect service on the unidentified defendants by February 23, 2007, would result in their dismissal. Plaintiff again failed to identify the "John Doe" defendants. Accordingly, all "John Doe" defendants are hereby formally dismissed.

**IT IS HEREBY ORDERED** that, for the aforestated reasons, defendants Odie Washington, Donald Snyder and Richard "Rick" Oakley's motion for summary judgment **(Doc. 85)** is **GRANTED** in all respects.

**IT IS FURTHER ORDERED** that all "John Doe" defendants are hereby formally dismissed due to plaintiff's failure to identify them and effect service upon them.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: January 15, 2008
s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**